Roxana **SANCHEZ–PEREZ,**
**et al., Plaintiffs,**

v.

Jose **SANCHEZ–GONZALEZ,**
**et al., Defendants.**

**Civil No. 06–1035 (FAB).**

United States District Court,
D. Puerto Rico.

June 15, 2010.

Opinion Denying Reconsideration
July 2, 2010.

Edgardo L. Rivera–Rivera, Jose L. Lugo–Mercado, Rivera & Fernandez Reboredo PSC, San Juan, PR, for Plaintiffs.

Francisco A. Ojeda–Diez, Lumy Mangual–Mangual, P.R. Department of Justice, Francisco R. Gonzalez–Colon, Francisco J. Gonzalez–Magaz, F.R. Gonzalez Law Office, Charles A. Rodriguez–Colon, San Juan, PR, for Defendants.

## OPINION & ORDER

BESOSA, District Judge.

Pending before the Court are the respective motions for summary judgment filed by plaintiffs and defendants. (Docket Nos. 77 & 79.) Having considered the arguments contained in the parties' motions for summary judgment and the responses to those motions the Court **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' motion for summary judgment.

## DISCUSSION

### I. Procedural Background[1]

On January 12, 2006, Roxana Sanchez–Perez ("Sanchez–Perez") and her husband, Ivan Laurido ("Laurido"), (collectively "plaintiffs") filed a complaint alleging claims pursuant to 42 U.S.C. § 1983 ("section 1983"), the Puerto Rico Constitution, and Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141, against: (1) Jose Sanchez–Gonzalez ("Sanchez–Gonzalez"); (2) Heriberto Rodriguez–Adorno ("Rodriguez–Adorno"); (3) Hector Diaz ("Diaz"); the (4) the Municipality of Morovis ("Municipality"); and the (4) Consorcio Dorado–Manati ("Consor-

cio")[2]. (Docket No. 1.) The complaint bases its section 1983 claims on violations of Sanchez–Perez's First, Fifth, and Fourteenth Amendment rights stemming from her dismissal from employment with the Consorcio allegedly based on political affiliation. (Docket No. 1 at ¶ 5.2.) Sanchez–Perez alleges that she was harassed and dismissed from employment because of her political involvement with the Popular Democratic Party ("PDP") by individuals within the management of the Consorcio who belonged to the New Progressive Party ("NPP"), including the individual named defendants. (Docket No. 1 at 4.1–4.19.) On June 1, 2007, plaintiffs filed an amended complaint alleging additional violations of Sanchez–Perez's First Amendment rights based on interference with her current employment in retaliation for filing the complaint in this case. (Docket No. 75–2 at 4.20–4.23.)

On May 17, 2007, the Court ordered that all parties file simultaneous motions for summary judgment no later than June 18, 2007, addressing the following issues: (1) whether plaintiffs' allegations are time-barred; and (2) whether Sanchez–Perez's position at the Consorcio was a trust or regular position, which bears on the possibility of reinstatement to positions she previously held. (Docket No. 74.) The Court provided that any responses were to be filed no later than July 9, 2007. *Id.* On June 18, 2007, defendants filed a joint motion for summary judgment arguing that: (1) Sanchez–Perez's section 1983 claims related to harassment and her dismissal

---

1. Given the relatively brief nature of the relevant uncontested factual background, a detailed, a separate section outlining that background is unnecessary. The Court will incorporate uncontested facts as needed in its legal analysis.

2. The amended complaint describes the Consorcio as a legal entity supervised by the mayors of several municipalities, including

Rodriguez–Adorno, which is "administered by various executive officers," including Sanchez–Gonzalez, and provides Workforce Investment Act services through the use of an administrative staff. (*See* Docket No. 75–2 at ¶ 3.5.) Diaz was removed as a party as a result of the plaintiffs' amendments to the complaint. (*See* Docket Nos. 1 & 75–2.)

from employment with the Consorcio were not filed within the applicable statute of limitations; (2) defendants did not act under color of state law; (3) Sanchez–Perez had no property interest in her employment; (4) Sanchez–Perez was a trust employee, rather than a regular employee, thus precluding her reinstatement to her former position; and (5) defendants are entitled to qualified immunity with regard to Sanchez–Perez's dismissal. (*See* Docket No. 77.)

On the same date, plaintiffs filed a motion for summary judgement arguing that: (1) an administrative determination precludes defendants from litigating the issue of whether the nature of Sanchez–Perez's employment with the Consorcio was that of a trust or regular position; and (2) Sanchez–Perez's section 1983 claims related to harassment and her dismissal from employment with the Consorcio were filed within the time period prescribed by the applicable statute of limitations. (Docket No. 79.) All parties filed responses to their respective counterparts' motions for summary judgment on July 9, 2007.

## II. Legal Analysis

### A. Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine

issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported

speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### B. Plaintiff Ivan Laurido's Section 1983 Claims

As a preliminary matter, the Court notes that Laurido, despite being included as a plaintiff in the section 1983 claims based on defendants' alleged interference with his wife's employment, cannot maintain those claims regardless of the Court's decision on the applicable statute of limitations. (*See* Docket No. 75–2.) It is clear that Laurido has no standing to pursue any of the section 1983 claims, because those claims are based not on a violation of his constitutional rights, but rather the violation of his spouse's constitutional rights related to her employment. *See Sanchez–Nuñez*, 509 F.Supp.2d at 151 (holding that a wife lacked standing to sue under section 1983 for violations to her husband's constitutional rights); (Docket No. 75–2.) Given that all allegations of constitutional violations in the complaint relate to interference with Sanchez–Perez's employment, any section 1983 claims brought by Laurido are **DISMISSED WITH PREJUDICE.**[3]

### C. Statute of Limitations for Sanchez–Perez's Section 1983 Claims

Section 1983 does not set forth a limitations period, but instead borrows the forum state's statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 240–241, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Rosario Rivera v. Aqueduct and Sewer Auth. of P.R.*, 472 F.Supp.2d 165, 170 (D.P.R.2007) (*citing Wilson v. Garcia*, 471 U.S. 261, 276–278,

105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *López–González v. Municipality of Comerío*, 404 F.3d 548, 551 (1st Cir.2005); *Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997)). Under Puerto Rico law, the applicable limitations period for personal injury actions is one year. *See* P.R.Laws Ann. tit. 31, § 5298 (2006); *Carreras–Rosa*, 127 F.3d at 174. Accordingly, the one-year term applies for section 1983 actions in Puerto Rico. *Torres v. Superintendent of the Police of P.R.*, 893 F.2d 404, 406 (1st Cir.1990). "The underlying premise for the limitations period is to protect both the defendants from having to defend from distant events as well as those affected individuals who timely prosecute their claims." *Del Carmen Rodriguez v. Trujillo*, 507 F.Supp.2d 131, 135 (D.P.R.2007) (*citing Vistamar, Inc. v. Fagundo–Fagundo*, 430 F.3d 66, 70–71 (1st Cir.2005); *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 750 (1st Cir.1994)).

"Although the limitations period is determined by state law, the date of accrual is a federal law question." *Carreras–Rosa*, 127 F.3d at 174. The accrual period " 'ordinarily starts when the plaintiff knows, or has reason to know of the injury on which the action is based.' " *Id.* (quoting *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992)). Therefore, the one-year statute of limitations for actions brought under section 1983 "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury". *Gonzalez Garcia v. P.R. Elec. Power Auth.*, 214 F.Supp.2d 194, 200; *Benitez–Pons v. Commonwealth of Puerto Rico*, 136 F.3d 54, 59 (1st Cir.1998).

---

3. Although there are factual allegations in the amended complaint related to retaliation for filing the complaint in the present case, those allegations are limited to the activity of, and retaliation against, Sanchez–Perez. Therefore, those allegations cannot serve as a basis for any section 1983 claim brought by Laurido. (*See* Docket No. 75–2 at ¶¶ 4.20–4.23.)

■ "In employment discrimination cases involving wrongful discharges, the statute of limitations begins to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal)." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992) (citing *Ching v. MITRE Corp.,* 921 F.2d 11, 14 (1st Cir.1990)). "It is the clarity of the notice received, not whether it is memorialized on office stationary or reduced to writing, that determines the accrual of causes of action premised upon wrongful deprivation of employment under section 1983." *Id.* (citing *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 288 (7th Cir.1986)). "In other words, the accrual date for purposes of a section 1983 employment discrimination case is the date when the employee reliably knew he had lost his job, not the date when the employer dotted a particular 'i' or crossed a particular 't.' " *Id.*

■ Defendants argue that plaintiff Sanchez–Perez learned of the decision to terminate her on December 29, 2004, or at the latest, January 4, 2005. (Docket No. 77 at 7–8.) Both of these dates fall more than a year behind the filing of the complaint on January 12, 2006. (*See* Docket No. 1.) Defendants point to factual allegations in the complaint, which are restated in the amended complaint, clearly asserting that on December 29, 2004, Rodriguez–Adorno "questioned [Sanchez–Perez's] employment status with the Consorcio as a regular or trust employee, anticipating that she was going to be dismissed due to her political activism with the PDP." (Docket No. 75–2 at ¶¶ 4.10–4.11.) The amended complaint further alleges that on January 4, 2005, Rodriguez–Adorno, Diaz, and Sanchez–Gonzalez "again questioned

[Sanchez–Perez] about her status as a regular or trust employee ... and asked her when she was going to resign, because they (the NPP) had won the election and that she was expected to resign or she was going to be dismissed." (Docket No. 75–2 at ¶¶ 4.12–4.13.)

Plaintiff's only argument regarding the application of the statute of limitations to her claims is that her cause of action for political discrimination did not accrue until she received the formal notice of her dismissal on January 14, 2005, which falls within the time allotted by the statute of limitations. (Docket No. 79 at 19–20.) Plaintiff claims that any of the factual allegations occurring prior to that date constitute relevant background evidence of her discriminatory dismissal pursuant to *Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc.,* 425 F.3d 67, 79 (1st Cir. 2005). As noted above, however, it is not the formal notice of dismissal that commences the statute of limitations in an employment discrimination case, but rather "when the employee reliably knew he had lost his job." *Rivera–Muriente,* 959 F.2d at 353. Given the facts as alleged in the complaint, and uncontested between the parties,[4] regarding conversations between defendants and Sanchez–Perez, it is apparent that Sanchez–Perez knew that the decision had already been taken to terminate her employment with the Consorcio over a year before the filing of the complaint on January 12, 2006. As Sanchez–Perez offers no other argument to save her claims based on those factual allegations from the statute of limitations, none of those alleged constitutional violations may serve as the basis for a timely section 1983 action. Accordingly, Sanchez–Perez's section 1983 claims based on

---

4. Defendants included assertions in their statement of uncontested facts based on the cited allegations in the complaint and plaintiff admitted those assertions in their opposition statement of uncontested facts. (*See* Docket No. 77–16; Docket No. 90–4.)

Sanchez–Perez's dismissal from the position she held with the Consorcio or any other events alleged to have occurred prior to that dismissal are **DISMISSED WITH PREJUDICE.**

The only remaining factual allegations which could potentially underpin a section 1983 claim are those plaintiffs added in the amended complaint, stating that some of the defendants conspired to bar Sanchez–Perez from performing the duties of her current employment in a facility operated by the Municipality in retaliation for initiating this case. (*See* Docket No. 75–2 at ¶¶ 4.20–4.23.) Neither plaintiffs nor defendants address any claims based on those factual allegations in their respective motions for summary judgment. Therefore, any claims based on those factual allegations remain unaffected by the Court's disposition of the parties' motions for summary judgment.

### CONCLUSION

For the reasons expressed above, the Court **GRANTS** defendants' motion for summary judgment with regard to the claims it properly challenges. (*See* Docket No. 77.) Therefore, Sanchez–Perez's section 1983 claims based on her harassment and dismissal from employment with the Consorcio are **DISMISSED WITH PREJUDICE.** Further, any section 1983 claims brought by Laurido are **DISMISSED WITH PREJUDICE** for lack of standing to bring those claims. Plaintiffs' motion for summary judgment, (Docket No. 79), is **DENIED.**

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER

Before the Court is plaintiff Roxana Sanchez–Perez's ("Sanchez–Perez") motion

for reconsideration, (Docket No. 127), of the Court's opinion and order dismissing the majority of her claims, (Docket No. 120). Having considered the arguments proffered by Sanchez–Perez, the Court **DENIES** the motion for reconsideration, (Docket No. 127).

### I. Procedural Background

On June 15, 2010, the Court issued an opinion and order ruling on motions for summary judgment filed by all plaintiffs and defendants.[1] (Docket No. 120.) The opinion and order dismissed all section 1983 claims filed by plaintiff Ivan Laurido for lack of standing and found most section 1983 claims filed by plaintiff Sanchez–Perez to be barred by the statute of limitations. *Id.* The only section 1983 claim to survive the opinion and order is based on allegations added by the amended complaint asserting a violation of Sanchez–Perez's First Amendment rights. (Docket No. 120 at 10–11.)

On June 29, 2010, Sanchez–Perez filed a motion for reconsideration challenging the Court's conclusion that the section 1983 claims based on her dismissal from the Consorcio Dorado–Manati ("Consorcio") are barred by the applicable statute of limitations. (Docket No. 127.) Sanchez–Perez argues that the section 1983 statute of limitations could not possibly have started running until the date she received her formal notice of dismissal, thus making the claims based on her dismissal timely. *Id.*

### II. Legal Analysis

#### A. Motion for Reconsideration Standard

▮▮▮▮ " 'The Federal Rules of Civil Procedure do not specifically provide for

---

1. The motions for summary judgment addressed only plaintiffs' claims pursuant to 42 U.S.C. § 1983 ("section 1983") and did not raise any issue related to plaintiffs' claims pursuant to Article 1802 of the Puerto Rico Civil Code. (*See* Docket Nos. 77 & 79.)

the filing of motions for reconsideration.'" *Sanchez–Medina v. UNICCO Service Co.*, 265 F.R.D. 29, 32 (D.P.R.2010) (quoting *Silva Rivera v. State Ins. Fund Corp.*, 488 F.Supp.2d 72, 77 (D.P.R.2007)). "'Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e) if it seeks to change the order or judgment issued.'" *Id.* (quoting *Villanueva–Mendez v. Nieves Vazquez*, 360 F.Supp.2d 320, 323 (D.P.R.2005)). "Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Aybar v. Crispin–Reyes*, 118 F.3d 10, 16 (1st Cir.1997) (citations omitted). Those "motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir.1994) (quoting *F.D.I.C. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir.1992)).

### B. Plaintiff's Arguments for Reconsideration

Sanchez–Perez argues that the Court misinterpreted the law regarding accrual of a cause of action for employment discrimination pursuant to section 1983.[2] (Docket No. 127.) Specifically, she claims that the interactions between herself and defendants prior to the January 14, 2005, formal notice of dismissal were not "unambiguous and authoritative notice that she was being terminated from her employment," and thus could not have triggered the statute of limitations for section 1983 claims based on her dismissal. *Id.* at 3. Although Sanchez–Perez is correct that "the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act," the Court disagrees that plaintiff did not receive that notice until the January 14, 2005 formal notice of dismissal. *See Morris*, 27 F.3d at 749 (citing *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992)).

Sanchez–Perez relies primarily on two cases to support her argument, *Pastrana–Lopez v. P.R. Fire Dept.*, 338 Fed.Appx. 8 (1st Cir.2009) (not selected for publication in the Federal Reporter)[3], and *Ojeda–Rodriguez v. Zayas*, 666 F.Supp.2d 240 (D.P.R.2009). *Pastrana–Lopez* held that a letter informing an employee of the Puerto Rico Fire Department of his employer's intention to terminate his employment did not trigger the section 1983 statute of limitations where the employee subsequently "requested and received a pre-termination

---

**2.** Additionally, Sanchez–Perez argues that she could not have reliably known of her termination until her employer failed to return her to an alleged previously held career position. This argument is undeveloped in the motion for reconsideration and was not presented to the Court in plaintiff's motion for summary judgment or opposition to defendants' motion for summary judgment. (*See* Docket Nos. 79, 90, & 127.) Therefore, the Court will not consider this newly raised argument at this stage of the proceedings. *See Jorge Rivera Surillo & Co.*, 37 F.3d at 29. The Court notes, however, that the subsequent effects of a termination are irrelevant for the purposes of determining the date of accrual for an action under section 1983. *See Morris v. Gov't Devel. Bank of P. R.*, 27 F.3d 746, 749 (1st Cir. 1994).

**3.** The Court notes that unpublished First Circuit Court of Appeals decisions may only be cited for persuasive, rather than binding, authority. 1st Cir. R. 32.1(a). Because the Court distinguishes the factual circumstances of the present case from those of *Pastrana–Lopez*, however, reliance on the nature of that decision's precedential value is unnecessary.

hearing." *Id.,* 338 Fed.Appx. at 9. *Ojeda–Rodriguez* found that neither a letter notifying a public employee of "internally leveled charges" and potential dismissal nor defects in her pre-termination hearing process provided sufficiently unambiguous notice to cause a section 1983 employment discrimination claim to accrue. *Id.,* 666 F.Supp.2d at 249–50.

The particular circumstances described in the complaint in this case, and admitted by both parties at the summary judgment stage of the proceedings, differ from the factual circumstances presented in *Pastrana–Lopez* and *Ojeda–Rodriguez.* (*See* Docket No. 75–2 at ¶¶ 4.10–4.13; Docket No. 77–16; Docket No. 90–4.) When determining whether notice sufficient to trigger the section 1983 statute of limitations had been provided to the public employees involved, both *Pastrana–Lopez* and *Ojeda–Rodriguez* appear to rely on ambiguity generated by the possibility (however remote) of a subsequent, successful challenge to potential termination. In other words, until the conclusion of administrative review of the charges leveled against them and final notice of their termination, the public employees in those cases retained at least some hope that they would retain their employment. *See Pastrana–Lopez,* 338 Fed.Appx. at 9; *Ojeda–Rodriguez,* 666 F.Supp.2d at 249–50.

The record presented to the Court through Sanchez–Perez's and defendants' motions for summary judgment, however, reveals no similar possibility of Sanchez–Perez successfully challenging the defendants' decision to terminate her employment with the Consorcio. Through the course of conversations between Sanchez–Perez and defendants culminating on January 4, 2010, defendants definitively communicated to Sanchez–Perez that her employment with the Consorcio had come to an end. (*See* Docket No. 75–2 at ¶¶ 4.10– 4.13; Docket No. 77–16; Docket No. 90–4.) Given the factual differences highlighted above, the decisions in *Pastrana–Lopez* and *Ojeda–Rodriguez* to ground the section 1983 statute of limitations in formal notices of dismissal does not affect the Court's decision made in this case on the factual background presented in the parties' motions for summary judgment. *See Pastrana–Lopez,* 338 Fed.Appx. at 9; *Ojeda–Rodriguez,* 666 F.Supp.2d at 249–50; (Docket No. 75–2 at ¶¶ 4.10–4.13; Docket No. 77–16; Docket No. 90–4.)

The conversations between defendants and Sanchez–Perez described in the complaint and the parties' respective motions for summary judgment demonstrate that, on January 4, 2010 at the latest, defendants cited Sanchez–Perez's political affiliation and unambiguously presented her with two definitive options: resignation or dismissal. (*See* Docket No. 75–2 at ¶¶ 4.10–4.13; Docket No. 77–16; Docket No. 90–4.) Regardless of which path Sanchez–Perez might have chosen, it is at that point that Sanchez–Perez reliably knew that defendants had made the decision to end her employment with the Consorcio (by dismissal or resignation), thus commencing the one year statute for limitations for any claims based on that dismissal the following day. *See Morris,* 27 F.3d at 750 ("It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee") (citing *Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Muñiz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994)). Unlike the public employees in *Pastrana–Lopez* and *Ojeda–Rodriguez,* Sanchez–Perez had no lingering possibility of retaining her position after defendants communicated their decision to her. (*See* Docket No. 75–1.) Therefore, any claims alleged in Sanchez–

Perez's January 12, 2006, complaint based on Sanchez–Perez's dismissal, or claims based on conduct preceding that dismissal, are barred by the statute of limitations applicable to section 1983 claims.

## III. CONCLUSION

For the reasons expressed above, plaintiff Sanchez–Perez's motion for reconsideration, (Docket No. 127), is **DENIED.**

**IT IS SO ORDERED.**